IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MERCEDES MARTINEZ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 22 C 6755 |
| ) | |
| ILLINOIS DEPARTMENT OF HUMAN ) | |
| SERVICES, DR. ROBERT SOBUT, ) | |
| and RICARDO FERNANDEZ, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Dr. Mercedes Martinez has sued the Illinois Department of Human Services, Dr. Robert Sobut, and Ricardo Fernandez. Dr. Martinez asserts claims for race and national origin discrimination and retaliation under Title VII of the Civil Rights Act of 1964 and under the Illinois Human Rights Act, and for breach of contract and defamation. IDHS answered the Title VII claims and moved to dismiss the state law claims against it for lack of federal subject matter jurisdiction. The Court granted that motion in early July. *See* Dkt. no. 55 (Order of July 11, 2023).

Dr. Martinez's claims against Mr. Fernandez, found in Counts 8 and 9 of Dr. Martinez's amended complaint, are state-law defamation claims. Dr. Martinez worked for IDHS as a psychiatrist at Chicago-Read Mental Health Center and had, she alleges, a successful tenure in that position. She alleges, however, that she experienced discrimination and harassment based on her gender, race, and national origin, as well as retaliation for complaining about discrimination. Among other things, Dr. Martinez

contends that Dr. Sobut, a supervisor to whom she reported, engaged in an extended campaign of harassment and retaliation against her. In 2020, during the COVID-19 pandemic, Dr. Sobut allegedly—and deliberately—failed to notify her of the extended date for renewal of her medical license, and she missed the date by two days. According to Dr. Martinez, under Illinois statute a medical license does not actually lapse until 90 days after its expiration date, following notice by the Illinois Department of Financial and Professional Regulation (IDFPR). She got her renewal in only two days late, and thus her license never expired. Dr. Martinez says, however, that Dr. Sobut threatened to (falsely) report her to the National Practitioner Databank (NPDB) for practicing without a license and that he used this incident to summarily suspend her employment and to lock her out of Chicago-Read.

In April 2022, Dr. Martinez alleges, she submitted a re-application for restoration of her medical staff privileges. Mr. Fernandez—the chief Administrator of Chicago-Read—sent Dr. Martinez a letter stating that the hospital's Medical Executive Committee—evidently chaired by Dr. Sobut—had denied her application. In the letter, Mr. Fernandez also asserted that Dr. Martinez had been dishonest regarding the late submission of her license renewal.

The key allegations in Dr. Martinez's defamation claims read as follows:

> 135. In October 2020, Dr. Sobut publicly and falsely accused Dr. Martinez of being a liar after she mistakenly submitted her license renewal paperwork three days late.
>
> 136. Dr. Sobut reported the same allegation multiple times to the Chicago-Read Medical Executive Committee.
>
> 137. Chicago-Read and the State of Illinois adopted the malicious and false statements made against Dr. Martinez and republished those

> statements on multiple occasions, including in letters to the National Practitioner Databank and the [IDFPR].
>
> 138. Mr. Fernandez republished the false and malicious statements made against Dr. Martinez by drafting ad approving the letters.

Am. Compl. ¶¶ 135-38 (Count 8); see also id. ¶¶ 146-49 (Count 9). Similarly, in a separate part of her complaint, Dr. Martinez alleges that

> 72. Mr. Fernandez and Chicago-Read further defamed Dr. Martinez by submitted letters to the NPDB and to the Illinois Department of Financial and Professional Regulation (IDFPR) . . . falsely and maliciously labeling Dr. Martinez as a liar and attacking her professional capabilities based on misinformation.

Id. ¶ 72.

In seeking dismissal of the defamation claims, Mr. Fernandez cites the Eleventh Amendment, the state-law doctrine of public official immunity, and state-law sovereign immunity. The Court begins with Mr. Fernandez's request for dismissal based on the Eleventh Amendment. The Eleventh Amendment bars actions in federal court against a state, a state agency, or a state official acting in his official capacity. See, e.g., Council 31 of AFSCME v. Quinn, 680 F.3d 875, 881 (7th Cir. 2012). Dr. Martinez, however, has sued Mr. Fernandez in his individual capacity, not his official capacity. Mr. Fernandez cites Luder v. Endicott, 253 F.3d 1020 (7th Cir. 2001), for the proposition that in such a case, "the court is obliged to consider whether [the claim] may really and substantially be against the state." Id. at 1023. But Luder says this is so when "the judgment sought would expend itself on the public treasury or domain, or interfere with the public administration, or if the effect of the judgment would be to restrain the Government from acting, or to compel it to act." Id. (quoting Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 101 n. 11 (1984)). That does not appear to be the

3

case here, and Mr. Fernandez has made no effort to show that it is. Thus he has not established that the Eleventh Amendment bars Dr. Martinez from asserting her claim here.

The next basis offered by Mr. Fernandez for dismissal is the state-law doctrine of public official immunity. In support, Mr. Fernandez cites (among other cases) *Tang v. Illinois Department of Children and Family Services*, No. 17 C 5790, 2021 WL 4477981, at *7 (N.D. Ill. Sept. 30, 2021). He omits, however, the court's statement in that case that "the immunity does not apply if the official acted in bad faith or with malice." *Id.* In this case, Dr. Martinez expressly alleges that Mr. Fernandez acted with malice. *See* Am. Compl. ¶¶ 140, 151. Because this is a recognized exception to public official immunity, dismissal under Rule 12(b)(6) would be inappropriate.

Finally, Mr. Fernandez cites the doctrine of sovereign immunity, again contending that Dr. Martinez's claim against him amounts to a claim against the State of Illinois. *See* 745 ILCS 5/1 ("the State of Illinois shall not be made a defendant or party in any court"), 8(a) (Illinois Court of Claims has exclusive jurisdiction over "[a]ll claims against the State founded upon any law of the State of Illinois").

This argument by Mr. Fernandez fares better for him than the other two. To determine the application of sovereign immunity to a lawsuit against an individual state employee, a court

> must decide whether the plaintiffs' claim is nominally one against [the employee] and instead one against the State. An action brought against a state employee is considered one against the state when:
>
> > [T]here are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment;

4

> and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State.

*T. S. v. County of Cook*, 67 F.4th 884, 892 (7th Cir. 2023) (quoting *Healy v. Vaupel*, 133 Ill. 2d 295, 309, 549 N.E.2d 1240, 1247 (1990) (internal quotation marks and internal citation omitted)).

In this case, there is no contention that Mr. Fernandez acted beyond the scope of his authority (part 1 of the test). His statements that Dr. Martinez alleges were defamatory all involve reports or communications he made (to the IDFPR and the National Practitioner Databank) as part of his regular duties as a hospital administrator. And for that same reason, the statements involve matters ordinarily within his normal and official functions (part 3 of the test). The only aspect in which there is even a potential for dispute involves part 2 of the *Healy/T.S.* test, which concerns whether the duty breached "was not owed to the public generally independent of the fact of State employment." On one level, it may be said—accurately—that the duty not to make intentionally false statements that harm another is one owed to the public at large, and that is the duty Mr. Fernandez is claimed to have breached her. But based on *T.S.*'s reading of *Healy*, that does not appear to be the correct frame of reference. Rather, the cases (as discussed in *Healy*) that appear to involve duties "owed to the public generally" involve negligence claims involving medical care or operation of a motor vehicle, in other words, duties that, *vis-à-vis the particular plaintiff*, existed independent of the state employee's employment. *See Healy*, 133 Ill. 2d at 311-12, 549 N.E.2d 1248-49; *see also T.S.*, 67 F.4th at 892-93. In this case, however, as in *T.S.*, the wrongdoing at issue "stems solely from [Mr. Fernandez's] role as [administrator of Chicago-Read]." Specifically, it is by virtue of his role as administrator that Mr.

5

Fernandez was called upon to make reports to the IDFPR and to the National Practitioner Database.

In short, although the *duty* at issue here is one that is owed to the public, its source in this particular case came from Mr. Fernandez's state employment. That, under at least the Seventh Circuit's decision in *T.S.*, appears to be the appropriate focus. See *T.S.*, 67 F.4th at 893 ("the [plaintiffs'] allegations make clear that their claim against [the defendant] stems from his failure in the performance of his duties as superintendent. So, we have no doubt that the source of any duty [the defendant] owed the [plaintiffs] comes from his state employment."). Specifically, Mr. Fernandez's reporting of Dr. Martinez's purported misconduct arose by virtue of his position as administrator of a hospital, which in this case was a state-owned institution.

The Court notes that this point is not entirely free from doubt. Depending on how broadly one reads *T.S.*, it could be understood to suggest that *any* claim against a state employee that arose in the course of her employment amounts to a claim against the state. And this reading of the doctrine of sovereign immunity would appear to essentially wipe out (by subsuming) the doctrine of public official immunity, which seems illogical. None of this seems to the Court to be what the Illinois Supreme Court intended in *Healy*. But this Court is bound by *T.S.*, and under that case, Dr. Martinez's claim is barred. Dr. Martinez may wish—depending on her view of the importance of litigating these particular claims against Mr. Fernandez as part of the present case—to consider asking the Court to certify this question for interlocutory appeal under 28 U.S.C. § 1292(b).

**Conclusion**

For these reasons, the Court concludes that state sovereign immunity bars Dr. Martinez's defamation claims against Mr. Fernandez (Counts 8 and 9 of the amended complaint, as to defendant Fernandez). Those claims may be brought only in the Illinois Court of Claims and are therefore dismissed from this lawsuit.

Date: August 25, 2023

_____
MATTHEW F. KENNELLY
United States District Judge